UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

QUINCI GREENE,

          Plaintiff,

   v.

CITY OF SAN FRANCISCO, et al.,

          Defendants.

Case No.  25-cv-06556-JCS

**ORDER TO SHOW CAUSE**

## I.      INTRODUCTION

Plaintiff Quinci Greene, pro se, applied to proceed in forma pauperis and the Court granted his application.  *See* Docket No. 8.  The Court now reviews the sufficiency of Plaintiff's complaint to determine whether it satisfies 28 U.S.C. § 1915(e)(2)(B).  Because the complaint contains claims that are not sufficiently pled, Plaintiff is ORDERED TO SHOW CAUSE why the complaint should not be dismissed in part, as set forth below.  Plaintiff may file either an amended complaint or a response to this order addressing why his complaint is sufficient, no later than **October 14, 2025**.

## II.     ALLEGATIONS OF THE COMPLAINT[1]

Plaintiff alleges that on September 4, 2024, he was approached by security officers at the San Francisco Public Library who said, "Quinci Greene! You know you are suspended."  Compl., dkt. no. 1 at ECF pp. 14-15.   Plaintiff alleges that he told the security officers that he was not suspended and had "documentation saying [he] was not suspended in [his] belongings" but

---

[1] Because the factual allegations of a plaintiff's complaint are generally taken as true in the context of determining whether the complaint states a claim, this section summarizes Plaintiff's allegations as if true.  Nothing in this order should be construed as resolving any issue of fact that might be disputed at a later stage of the case

United States District Court
Northern District of California

nonetheless walked towards the elevator to leave the building, as ordered by the security officers. *Id.* at ECF p. 15, 29. According to Plaintiff he had no intention of resisting the orders of the security officers and had left the elevator, accompanied by the security officers to exit the building, when deputies of the San Francisco Sheriff's Department ("SFSD") arrived. *Id.* Plaintiff alleges that the security officers and the deputies then "pushed [him] against the wall and began punching and attacking [him]." *Id.* Plaintiff alleges that he was "forcibly handcuffed and imprisoned" in the library's security office for over an hour, then was taken to San Francisco County Jail at 850 Bryant Street, where he was "stripped naked," forced to take a covid test and held for two days without ever being taken before a judge, despite his requests. *Id.*

Plaintiff alleges that between 2021 and September 2024, security officers of the San Francisco Public Library "engaged in a pattern of conduct the intent of which was to follow or alarm or harass" him, alleging in particular:

> Several times I was forced to leave the library. I was forced to leave the library without being shown a reason why or told anything other than you are not allowed in the library. I did not try to stay in the library on these occasions, I would ask why and would always be told by the [San Francisco Main Library Security] that my only options are to write the library and ask for an appeal of a suspension I had no knowledge about. [In] 2022 I requested an appeal to the suspension. I believed the suspension to be FALSE, DECIETFUL, and VOID OF TRUTH but because I was being harassed every time that I went into the library I decided to appeal and attend the appeal meeting and inquire/ argue the validity of the appeal. [In] 2022 I was told the appeal would be sustained and that I could not enter the library again until July 2024.

Compl. at ECF pp. 24-25. A document attached to the Complaint reflects that Plaintiff's library privileges were suspended based on an incident that occurred at the Excelsior Branch of the public library on September 22, 2022 and that the suspension expired on July 24, 2024. *Id.* at ECF p. 32.

Plaintiff alleges that SFSD "is used by the City and County of San Francisco & San Francisco Main Library to enforce codes/statutes/rules of the library, and to hold/arrest any US Citizen that breaks any of the library's rules." *Id.* at ECF p. 12.

Plaintiff names as defendants: 1) the City and County of San Francisco ("CCSF"); 2) the San Francisco Main Library; 3) San Francisco Main Library Security; and 4) SFSD. With respect to San Francisco Main Library Security and SFSD, it appears that Plaintiff seeks to assert his

United States District Court
Northern District of California

1   claims against both the entities and the officers involved, as Doe defendants.  *See id*. at ECF pp.

2   11-12 (listing Doe defendants as separate parties).

3        The complaint contains several pages listing statues, constitutional amendments, and other

4   documents in a section entitled "legal claims".  *Id.* at ECF pp. 12-14.  These purported sources of

5   authority are not specifically linked to particular claims and many, such as the "Zodiac

6   Constitution," are not recognized as legal authority by federal courts.  The Complaint also

7   articulates six causes of action, which are asserted against all four defendants:  1) "Extreme

8   negligence," *id.* at ECF pp. 16-18; 2) "Invasion of Privacy/False Arrest," *id.* at ECF pp. 18-19; 3)

9   "Prolonged Detention/ Overdetention, False Imprisonment," *id.* at ECF pp. 19-20; 4) "Assault,

10  Battery, Use of Excessive Force," *id.* at ECF p. 21; 5)  "Unlawful Search, Unlawful Seizure," *id.*

11  at ECF pp. 21-23; and 6) "Emotional Damage/Mental Stress," *id*. at ECF pp. 23-24.  Each claim

12  includes a long list of statutes, constitutional amendments and other authorities that were

13  purportedly violated, and multiple theories of liability.

### III.    ANALYSIS

#### A.    Legal Standards Under 28 U.S.C. § 1915 and Rule 12(b)(6)

16       Where a plaintiff is found to be indigent under 28 U.S.C. § 1915(a)(1) and is granted leave

17  to proceed in forma pauperis, courts must engage in screening and dismiss any claims which:

18  (1) are frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek

19  monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); *see*

20  *Marks v. Solcum*, 98 F.3d 494, 495 (9th Cir. 1996).

21       To state a claim for relief, a plaintiff must make "a short and plain statement of the claim

22  showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Further, a claim may be

23  dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6);

24  *see also Diaz v. Int'l Longshore and Warehouse Union, Local* 13, 474 F.3d 1202, 1205 (9th Cir.

25  2007).  In determining whether a plaintiff fails to state a claim, the court takes "all allegations of

26  material fact in the complaint as true and construe[s] them in the light most favorable to the non-

27  moving party." *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975

28  (9th Cir. 2007).  However, "the tenet that a court must accept a complaint's allegations as true is

United States District Court
Northern District of California

3

1   inapplicable to legal conclusions [and] mere conclusory statements," *Ashcroft v. Iqbal*, 556 U.S.

2   662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), and courts "do not

3   necessarily assume the truth of legal conclusions merely because they are cast in the form of

4   factual allegations." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010) (internal

5   quotation marks omitted).  The complaint need not contain "detailed factual allegations," but must

6   allege facts sufficient to "state a claim to relief that is plausible on its face."  *Id.* at 678 (citing

7   *Twombly*, 550 U.S. at 570).

8          Where the complaint has been filed by a pro se plaintiff, courts must "construe the

9   pleadings liberally . . . to afford the petitioner the benefit of any doubt."  *Hebbe v. Pliler*, 627 F.3d

10  338, 342 (9th Cir. 2010).  "A pro se litigant must be given leave to amend his or her complaint

11  unless it is absolutely clear that the deficiencies in the complaint could not be cured by

12  amendment."  *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987), superseded on other grounds

13  by statute, as recognized in *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) (en banc).  Further,

14  when it dismisses the complaint of a pro se litigant with leave to amend, "the district court must

15  provide the litigant with notice of the deficiencies in his complaint in order to ensure that the

16  litigant uses the opportunity to amend effectively."  *Id.* (quoting *Ferdik v. Bonzelet*, 963 F.2d

17  1258, 1261 (9th Cir. 1992)).  "Without the benefit of a statement of deficiencies, the pro se litigant

18  will likely repeat previous errors."  *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th

19  Cir. 1988) (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)).

20      **B.    Discussion**

21          As a preliminary matter, the Court wishes to make clear to Plaintiff, who has declined the

22  jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c), that the Court

23  finds that Plaintiff has pled *some* valid claims, as explained further below.  Thus, even if Plaintiff

24  fails to respond to this Order to Show Cause, or does not cure the defects identified herein, the

25  undersigned will recommend to the district judge that those claims be permitted to go forward.  As

26  to the claims that are inadequately pled, however, the undersigned will recommend dismissal

27  unless Plaintiff files an amended complaint that cures the defects the Court has identified or a

28  response that persuades the Court that those claims are sufficiently pled.

United States District Court
Northern District of California

4

United States District Court
Northern District of California

## C.    Rule 8

The Court's review of the complaint in this case has been made difficult by Plaintiff's failure to adhere to the requirements of Rule 8 of the Federal Rules of Civil Procedure. Instead of "a short and plain statement . . . showing that the pleader is entitled to relief[,]" the complaint is lengthy, convoluted and cites a multitude of legal authorities, making it impossible to determine, except in a very approximate sense, the legal or factual basis for Plaintiff's claims. It is beyond the scope of this review to address each of the many statutes, constitutional provisions and other documents cited in each claim. Instead, the Court will review what it understands to be the gist of Plaintiff's claims. To the extent that the Court may have misconstrued Plaintiff's claims or omitted claims he seeks to assert, Plaintiff may file an amended complaint that is in compliance with Rule 8 to clarify what claims he is asserting and the legal and factual basis for those claims.

## D.    Federal Claims under 42 U.S.C. § 1983

The Court construes Plaintiff's complaint as asserting civil rights claims under 42 U.S.C. § 1983 based on violation of his First Amendment rights to practice his religion and to access the library, *see* Compl. at ECF pp. 17, 25, and his Fourth Amendment rights to be free from excessive force, false arrest and delayed presentation to a judge following his warrantless arrest.

### 1.    Proper Defendants Under Section 1983

Section 1983 creates a cause of action against a "person who, under color of any [state law], subjects, or causes to be subjected, any [person] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The term "person" under section 1983 encompasses state and local officials sued in their individual capacities, private individuals and entities that acted under color of state law, and local governmental entities but does not include municipal departments. *Garcia v. City of Merced*, 637 F. Supp. 2d 731, 760 (E.D. Cal. 2008). Thus, CCSF is a proper defendant as to Plaintiff's Section 1983 claims, but the San Francisco Public Library and its security office are not. *Sanders v. San Francisco Pub. Libr.*, No. 23-CV-00211-JSW, 2023 WL 5723695, at *3 (N.D. Cal. Sept. 5, 2023) (holding that San Francisco Public Library is an unincorporated municipal department and therefore may not be sued under Section 1983 but recognizing that Section 1983 claims could be asserted against the

5

City and County of San Francisco.). Likewise, SFSD, as a municipal department, is not a proper defendant on Plaintiffs' Section 1983 claims. *See Garcia*, 637 F. Supp. 2d at 760 (holding that city police department and county sheriff's department were not "persons" under Section 1983).

As to the SFSD officers named as Doe defendants, these individuals are "persons" under Section 1983 so long as they are sued in their individual capacities. *See Bowman v. Anderson*, No. CR-F-04-5389 OWW DLB, 2005 WL 8176402, at *3 n. 1 (E.D. Cal. Mar. 4, 2005) (citing *Venegas v. County of Los Angeles*, 32 Cal. 4th. 820, 826 (2004)). The use of "Doe Defendants" is generally disfavored in federal court because, as a practical matter, it is usually impossible to serve a summons and pleading on an anonymous defendant. *Menefee v. Tigard Police Dep't*, No. 3:20-CV-01497-AC, 2020 WL 6547640, at *2 n. 1 (D. Or. Nov. 6, 2020). "Nonetheless, the use of Doe Defendants may be necessary when a plaintiff cannot discover the identity of the defendant before filing the operative pleading." *Id.* Given the early stage of the case and the likelihood that Plaintiff will be able to determine the identity of the sheriff's deputies involved in his arrest through discovery, it is recommended that Plaintiff be permitted to proceed, at least until some discovery has occurred, against the sheriff's deputies as Doe defendants.

Likewise, because discovery will likely allow for the determination of the identities of the library security officers involved in detaining Plaintiff, it is recommended that Plaintiff be permitted to proceed against them as Doe defendants as well. Further, while the facts alleged in the complaint are insufficient to determine whether these individuals are employed by the County, they can be sued as state actors on the basis that they are alleged to have acted jointly with the sheriff's deputies as to both the use of excess force and Plaintiff's detention and arrest. *See Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002) (private individual may be liable under § 1983 under joint action test where there was "substantial degree of cooperation" between private party and state official). In particular, there was a "substantial degree of cooperation" between the security officers and SFSD as Plaintiff alleges that the sheriff's department provides security for the San Francisco Public Library, that the library security officers called SFSD for back-up, that the security officers and the deputies together used excessive force on him, and that Plaintiff was then detained in the security office in handcuffs waiting to be taken by the deputies to the jail. *See*

6

1    *id.*

2        In sum, Plaintiff's § 1983 claims fail to state a claim against SFSD, the San Francisco

3    Main Library and the San Francisco Main Library Security Office because they are not proper

4    defendants under Section 1983.  As to the remaining Defendants (CCSF and the Doe Defendants),

5    the Court addresses the sufficiency of Plaintiff's Section 1983 claims below.

6                    **2.  First Amendment Claims**

7        Plaintiff alleges that Defendants "used a group of armed guards to unlawfully stop, assault,

8    and hold me, Quinci Greene Hostage, a private person who committed no crime—prohibiting me

9    from moving and traveling and honoring my religious faith [Islamism]. . . ."  Compl. at ECF p. 17.

10   The First Amendment  provides that "Congress shall make no law respecting an establishment of

11   religion."  U.S. Const. amend. I.  It is applicable to the states through the Fourteenth Amendment.

12   *Youth 71Five Ministries v. Williams*, No. 24-4101, 2025 WL 2385151, at *5 (9th Cir. Aug. 18,

13   2025).  Where an individual is in custody, this right is "violated where a defendant burdens the

14   practice of a prisoner's religion by preventing him from engaging in conduct mandated by his

15   faith, without any justification reasonably related to legitimate penological interests."  *Dunbar v.*

16   *Coffman*, No. 24-CV-08898-AMO (PR), 2025 WL 1696557, at *5 (N.D. Cal. June 17, 2025)

17   (citing *Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997)).  "To reach the level of a

18   constitutional violation, the interference with one's practice of religion must be more than an

19   inconvenience; the burden must be substantial and an interference with a tenet or belief that is

20   central to religious doctrine." *Id*. (internal quotations and citations omitted).

21       Here, Plaintiff has not alleged any specific facts showing that Defendants interfered with

22   his right to practice his religion.  Therefore, he fails to state a claim under the First Amendment's

23   free exercise clause against any defendant.

24       Plaintiff also alleges that he was "deprived" of his ability "to use the 'free and public

25   library.'" Compl. at ECF p. 25.  The First Amendment's protection of the " 'right to receive

26   information and ideas' has been held to encompass 'the right to some level of access to a public

27   library.' " *Van Den Heuvel v. Dorothy*, No. 221CV2176TLNCKDPS, 2022 WL 95237, at *3 (E.D.

28   Cal. Jan. 10, 2022) (quoting *Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242,

United States District Court
Northern District of California

1255 (3d Cir. 1992)). In *Van Den Heuval*, the court explained:

> "Most courts addressing this issue have relied on *Kreimer* to hold that a public library is 'a limited public forum.' " *Grant-Davis v. Bd. of Trustees of Charleston Cty. Pub. Libr.*, No. 2:15-CV-2676-PMD-MGB, 2017 WL 9360875, at *19 (D.S.C. May 24, 2017) (compiling cases). "As a limited public forum, the Library is obligated only to permit the public to exercise rights that are consistent with the nature of the Library and consistent with the government's intent in designating the Library as a public forum." *Kreimer*, 958 F.2d at 1261 (recognizing library's purpose "to aid in the acquisition of knowledge through reading, writing and quiet contemplation"). Thus, a library's enforcement of a rule against (for example) harassing others or noisy activities likely does not violate the First Amendment, provided it is applied reasonably. *See id.* at 1263 (applying "reasonableness" standard and noting that "[p]rohibiting disruptive behavior is perhaps the clearest and most direct way to achieve maximum library use."); *Grant-Davis*, 2017 WL 9360875, at *22-23 (dismissing First Amendment claim where plaintiff was denied access to library for having violated its rules prohibiting "loud unreasonable, and or disturbing actions" and "[t]hreatening behavior toward another person, either verbally or physically"); *Brinkmeier v. City of Freeport*, No. 93 C 20039, 1993 WL 248201, at *5 (N.D. Ill. July 2, 1993) ("[A] rule which prohibits disruptive behavior in a public library is at least conceptually inoffensive to the First Amendment.").

*Id.*

Here, Plaintiff alleges that he was doing nothing disruptive or offensive when he was told by security guards to leave the library, and that the suspension of his library privileges had already expired, as he told the officers. At the pleading stage, the Court takes these allegations to be true and finds that Plaintiff has raised a plausible inference that his exclusion from the library was unreasonable. Accordingly, he has stated a claim for violation of his First Amendment right to access the library against the Doe defendant library security officers who ordered him to leave the library. As discussed below, the Court concludes that Plaintiff has not stated a claim against the County on these grounds because he has not satisfied the requirements of *Monell*.

### 3. Fourth Amendment Claims

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015) (internal citations omitted). The Fourth Amendment further requires that the force used by law enforcement to carry out a seizure must be "objectively reasonable" under the totality of the circumstances. *Graham v. Connor*, 490 U.S. 386,

397 (1989). Here, Plaintiff has alleged that the security officers and sheriff's deputies assaulted and arrested him even though the suspension of his library privileges had expired and he was complying with the instructions of the security officers to leave the building.  These allegations are sufficient to support his Fourth Amendment unlawful arrest and excessive force claims against the Doe defendants. As discussed further below, however, these Fourth Amendment claims fail against CCSF under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978).

Plaintiff also alleges that his Constitutional rights were violated based on his alleged two-day detention without being presented to a judge for a probable cause determination. "In *Gerstein v. Pugh*, 420 U.S. 103 (1975), the Supreme Court held that the Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to extended detention following a warrantless arrest." *Anderson v. Calderon*, 232 F.3d 1053, 1069 (9th Cir. 2000), overruled on other grounds by *Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003). The Supreme Court subsequently explained that "judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*." *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991).  Nonetheless, a delay of less than 48 hours may be unconstitutional where a plaintiff can prove "that his or her probable cause determination was delayed unreasonably." *Id.*  "Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." *Id.*

Here, the only named Defendant to which such an unreasonable delay claim might apply appears to be CCSF as there are no allegations suggesting that any of the other defendants who are proper defendants under Section 1983 had a role in holding Plaintiff at the jail or preventing him from being taken promptly to appear before a judge. (As discussed above, SFSD is not a proper defendant on a Section 1983 claim.)  Again, however, CCSF may only be held liable under Section 1983 for Plaintiff's two-day detention if it was following an established policy or procedure, as discussed below, which Plaintiff has not alleged here.  Therefore, Plaintiff has not stated a claim against CCSF based on his prolonged detention without being presented to a judge

1    for a probable cause hearing.

2                     **4.  *Monell* Claims**

3            The Supreme Court has long held that "a local government may not be sued under § 1983

4    for an injury inflicted solely by its employees or agents," but instead only for injuries caused by "a

5    government's policy or custom, whether made by its lawmakers or by those whose edicts or acts

6    may fairly be said to represent official policy." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 693

7    (1978). Thus, to adequately plead a Section 1983 claim against a governmental entity," a "plaintiff

8    must establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the

9    municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's

10   constitutional right; and (4) that the policy is the 'moving force behind the constitutional

11   violation.' " *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting

12   *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989)).

13           A plaintiff seeking to establish municipal liability under section 1983 may do so by

14   demonstrating: 1)  that a municipal employee committed the alleged constitutional violation

15   "pursuant to a formal governmental policy or longstanding practice or custom which constitutes

16   the standard operating procedure of the local governmental entity;" 2) that the individual who

17   committed the constitutional violation was an official with "final policy-making authority and that

18   the challenged action itself thus constituted an act of official government policy;" or 3) that "an

19   official with final policy-making authority ratified a subordinate's unconstitutional decision or

20   action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992).

21           To the extent that Plaintiff seeks to impose *Monell* liability against CCSF based on the

22   constitutional violations discussed above, he must allege specific facts showing that the

23   constitutional violations were the result of an official policy.  Conclusory allegations that the

24   violations were the result of failure to train or  supervise officers is insufficient.  *See Iqbal*, 556

25   U.S. at 678.  Further, Plaintiff's allegation that he was asked to leave the library "several" times

26   between 2021 and 2024 is not sufficient to plausibly allege a custom or policy that was the moving

27   force behind any of the alleged constitutional violations.  *See* Compl. at ECF p. 24.  While this

28   conduct is related to Plaintiff's allegation that his First Amendment right to library access was

violated, it contains no details of the circumstances of the evictions, including whether his library privileges were suspended at the time and the reasons for any suspensions. Therefore, these allegations are insufficient to plead that Plaintiff was denied access to the library pursuant to a formal governmental policy or longstanding practice or custom.

Accordingly, the Court finds that Plaintiff fails to state a viable Section 1983 claim against CCSF.

### E.    State Law Claims

Plaintiff also appears to assert state law claims for negligence, intentional infliction of emotional distress ("IIED"), Assault and Battery, Intrusion into Private Affairs and False Imprisonment.    These claims are insufficiently alleged because Plaintiff has not satisfied the claims presentation requirements under California's Government Tort Claims Act.    In particular, before bringing a suit against a public entity, the Tort Claims Act requires the timely presentation of a written claim and a rejection in whole or part. Cal. Gov. Code section 905.    Likewise, under Cal. Gov't Code section 950.2, " 'a cause of action against a public employee . . . for injury resulting from an act or omission in the scope of his employment as a public employee is barred' unless a timely claim has been filed against the employing public entity." *Fowler v. Howell*, 42 Cal. App. 4th 1746, 1750–51 (1996).    Further, Plaintiff must allege facts demonstrating either compliance with the Government Tort Claims Act requirement or an excuse for noncompliance in order to state a claim. *State of California v. Superior Ct*., 32 Cal. 4th 1234 (2004).    Plaintiff has not alleged either in his complaint.    Therefore, his state law claims fail to state a claim as currently pled.

## IV.    CONCLUSION

Plaintiff is ORDERED TO SHOW CAUSE why this case should not be dismissed, in part, for the reasons discussed above.    Plaintiff may respond by filing either an amended complaint that addresses the deficiencies discussed above or a response that addresses why his current complaint is sufficient.    Plaintiff's response shall be filed by **October 14, 2025**.    If Plaintiff does not file a response by that date, the case will be reassigned to a United States district judge with a recommendation that it be partially dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

United States District Court
Northern District of California

1    Any amended complaint must include the caption and civil case number used in this order

2   and the words FIRST AMENDED COMPLAINT on the first page.  Because an amended

3   complaint completely replaces the previous complaint, any amended complaint may not

4   incorporate claims or allegations of Plaintiff's original complaint by reference, but instead must

5   include all of the facts and claims Plaintiff wishes to present and all of the defendants he wishes to

6   sue.

7    Plaintiff, who is not represented by counsel, is encouraged to consult with the Federal Pro

8   Bono Project's Legal Help Center in either of the Oakland or San Francisco federal courthouses

9   for assistance.  The San Francisco Legal Help Center office is located in Room 2796 on the 15th

10  floor at 450 Golden Gate Avenue, San Francisco, CA 94102.  The Oakland office is located in

11  Room 470 S on the 4th floor at 1301 Clay Street, Oakland, CA 94612.  Appointments, which are

12  currently being conducted by telephone or video-conference, can be made by calling (415) 782-

13  8982 or emailing federalprobonoproject@sfbar.org.  Lawyers at the Legal Help Center can

14  provide basic assistance to parties representing themselves but cannot provide legal representation.

15    **IT IS SO ORDERED.**

16

17  Dated:  September 16, 2025

18  _____

19  JOSEPH C. SPERO
    United States Magistrate Judge

20

21

22

23

24

25

26

27

28